IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN RIGNEY, *et al.*,

    *Plaintiffs*,

v.

CYBERPOINT3 HOLDINGS, LLC, *et al.*,

    *Defendants*.

No. 23-cv-1420-GLR

**MEMORANDUM OPINION AND ORDER**

In 2014-15, Plaintiffs John Rigney and Evan Dornbush sold two companies, Point3 Security, Inc. and P3F, LLC (the "P3 companies"), to Defendant CyberPoint3 Holdings, LLC ("CP3"), but remained as employees. In 2023, CP3 terminated Plaintiffs' employment and purported to nullify the sale. Plaintiffs then brought this action, contending, among other things, that Defendants had breached their contractual obligations, and had engaged in intentional misrepresentation, breach of fiduciary duty, and violations of trade secret statutes.

A few months after the case was filed, the parties jointly moved to stay the case and pursue settlement discussions. A settlement conference was held in January 2024. After Judge Aslan, who presided over the settlement conference, received correspondence from Defendants' counsel indicating the parties had reached a settlement, the Court entered a settlement order pursuant to Local Rule 111. ECF No. 11.[1] Plaintiffs, however, contend that no settlement was reached, and accordingly have moved to vacate the settlement order and proceed with the case. ECF No. 21 ("Mot.").

---

[1] Defendants refer to Judge Aslan as "Magistrate Aslan." That terminology has not been correct since 1990. *See* 28 U.S.C. § 631; Pub. L. 101–650 § 321, 104 Stat. 5089, 5117 (Dec. 1, 1990).

1

The Court issues this memorandum opinion setting forth the nature of the claims in the case, the relevant standards governing contract formation, and other non-confidential facts. But because the parties' negotiations, and the events surrounding the settlement conference, remain protected by Federal Rule of Evidence 408, the Court grants the parties' motions to seal as to that information, and elaborates its reasoning as to those sealed facts in a separate sealed memorandum. For the reasons set forth herein and in that separate sealed memorandum, the record does not establish that the parties reached a complete agreement with sufficiently definite terms to constitute an enforceable contract. Because the written record establishes that no agreement was reached, no hearing is necessary. *See* Loc. R. 105(6); *Hensley v. Alcon Labs.*, 277 F.3d 535, 541-42 (4th Cir. 2002). Plaintiffs' motion will be granted, and as proposed by the parties in their motion to stay, *see* ECF No. 6 ¶ 3, Defendants shall file their responsive pleading within 15 days of entry of this order.

## BACKGROUND[2]

Plaintiffs Rigney and Dornbush founded the P3 companies in 2014 and 2015. ECF No. 1 ("Compl.") ¶ 12. As Plaintiffs describe them, the P3 companies "provide talent screening and analytical tools to information security organizations to enhance their workforce." *Id*. In September 2021, Defendant Jason Gayl, the president and managing member of CP3 and Cyber Capital Partners, LLC ("Cyber Capital"), expressed interest in potentially purchasing the P3 companies. *Id.* ¶ 14. On September 24, 2021, Cyber Capital issued an "Indication of Interest" letter identifying, among other things, areas of inquiry Cyber Capital would need to pursue to

---

[2] At this point, no responsive pleading to Plaintiffs' complaint has been filed. The events during and following the settlement conference are pertinent to Plaintiff's motion to vacate the settlement order, not the underlying facts. But the Court summarizes the factual allegations in the Complaint, and its exhibits, as background.

decide whether to move forward with an acquisition. ECF No. 1-1. That letter did not contain any binding terms.

The parties proceeded to due diligence, which then led to the execution of a "Letter of Intent to Acquire Point 3 Security, P3F, LLC and related IP [intellectual property]." ECF No. 1-2. That letter, which is dated December 3, 2021, "set forth certain nonbinding understandings and certain binding agreements" between the P3 companies, on one hand, and Cyber Capital on the other. The binding provisions focused on due diligence: access to books and records, confidentiality, expenses, and the like. *Id.* at 13-15. The non-binding provisions addressed the potential deal structure, including the purchase price, a payment plan for the purchase price, earn-out and equity rollover terms, and other provisions such as regarding minimum net working capital and staffing. *Id.* at 4-12; *see also* Compl. ¶ 19.

Three weeks later, the parties entered into a revised Letter of Intent. *See* ECF No. 1-3. The binding provisions were largely (perhaps entirely) unchanged from the prior version. *Id*. at 14-16. But the nonbinding deal structure the parties were contemplating had, by that time, evolved substantially. *See id.* at 4-14; *see also* Compl. ¶ 20.

Over the last week of 2021, the parties negotiated the actual purchase agreements: a 31-page Stock Purchase Agreement ("SPA") detailing the terms of the sale of 70% of the shares of Point3 Security, Inc., ECF No. 1-4, as well as a Membership Interest Purchase Agreement ("MIPA") detailing the terms of the sale of 80% of Plaintiffs' membership units in P3F, LLC. *See* Compl. ¶ 24. There remained some open terms after execution of the SPA and MIPA, specifically the terms of a "Finance Plan," the execution and satisfaction of which allegedly were conditions of Defendants' obligations under the promissory notes.[3] The parties negotiated the

---

[3] The promissory notes are referenced in but not attached to the complaint.

Finance Plan, set forth in a February 1, 2022, letter from Defendant Richard Scigaj to Plaintiffs. ECF No. 1-4; Compl. ¶¶ 25-28. The Finance Plan set forth certain information about the P3 companies' performance in the first month post-closing, laid out certain "goals" for the P3 companies, and detailed a commitment to earn-out payments in the event the companies' contribution margin (as defined on page 5 of the Finance Plan) met certain thresholds. ECF No. 1-4; Compl. ¶¶ 25-28.

Defendants' payment obligations under the SPA, MIPA and Finance Plan (collectively, the "Purchase Agreements") are not entirely clear on the current record. In the SPA, Defendants agreed to "payment to the Stockholders of the Purchase Price." ECF No. 1-4 ¶ 3.1. "Purchase Price," in turn, was defined as "the aggregate amount paid to the Stockholders collectively as or from the promissory note in the form attached hereby as Exhibit B." *Id*. ¶ 3.2. The promissory note is not attached to the complaint, but Plaintiffs allege that the upshot of the interlocking contractual terms was to obligate Defendants to pay $4.5 million for the shares of Point 3 being purchased, and an additional $1 million for their membership interests in P3F being purchased. Compl. ¶ 24. Plaintiffs further allege that (a) those amounts were due within 12 months of satisfaction of the milestones set forth in the Finance Plan, and (b) Defendants also agreed to pay salaries to Plaintiffs of $250,000 along with reimbursement of company expenses. *Id*. ¶¶ 24, 26. Defendants' compensation obligations to Plaintiffs, however, were contingent on "keeping both companies cash-positive." *Id*. ¶ 28. Otherwise, Defendants would be permitted to "defer[]" up to 50% of the payments due. *Id*.

Plaintiffs remained as employees of the companies post-closing. But then, it seems, things went downhill. The parties seem to agree there were some challenges in generating revenue, but heavily dispute the causes of those challenges, who among the parties (if anyone) is

4

to blame for those challenges, whether Plaintiffs and/or Defendants breached one or more of the Purchase Agreements, and whether any of the parties engaged in tortious conduct such as fraud or theft of corporate opportunities or trade secrets. In January 2023, Plaintiffs were fired. *Id*. ¶ 38. In May 2023, Defendants sent a notice purporting to nullify the Purchase Agreements (or at least the SPA). *Id*. ¶ 40.[4]

Plaintiffs filed their complaint in this case a week later. *See id*. It alleges, among other things, that Defendants breached the SPA, and the promissory notes under both the SPA and MIPA, by failing to make payments as required following "completion of the Finance Plan," which Plaintiffs allege Defendants admitted occurred on October 27, 2022. *Id*. ¶¶ 42, 43. Plaintiffs further allege that Defendants fraudulently induced Plaintiffs into entering the SPA (Count 2), breached their fiduciary duties once they became officers of the P3 companies (Count 3), engaged in theft of trade secrets (Counts 4 and 5), failed to pay Plaintiffs salaries that were due to them (Count 6), and wrongfully terminated Plaintiffs' employment (Count 7).

A few months into the case, and before Defendants had responded to the complaint, the parties jointly filed a motion to stay the litigation to permit the parties to attempt to resolve their dispute through a settlement conference. ECF No. 6. That order was granted the next day, ECF No. 7, and the case was referred for a settlement conference. ECF No. 8. The settlement conference proceeded, before Judge Aslan, on January 23, 2024. ECF Nos. 10, 11.

The conference proceeded for a full day. Counsel for Defendants then emailed Judge Aslan at 5:37 p.m., indicating that the parties had settled, and describing certain terms of their settlement.

---

[4] The complaint alleges that Defendants' notice "purport[ed] to nullify the Stock Purchase Agreement." Compl. ¶ 40. The current record does not make clear whether that notice also purported to nullify the MIPA.

5

Given defense counsel's representation that "the parties" had "agree[d]" to the terms in the email, and as is the typical practice upon notice from parties that a case has a settled, the Court entered the order entitled "Settlement Order (Local Rule 111)." ECF No. 11. That order tracked the local rule and provided as follows:

> This Court has been advised that the above-captioned action has been settled against all parties, including all counterclaims, cross-claims and third-party claims, if any. Accordingly, under Local Rule 111, it is this 26th day of January, 2024 by the United States District Court for the District of Maryland hereby:
>
> ORDERED that this action is DISMISSED and each party is to bear its own costs unless otherwise agreed, in which event the costs shall be adjusted between the parties in accordance with their agreement. The entry of this Order is without prejudice to the right of a party to move for good cause within forty-five (45) days to reopen this action if settlement is not consummated. If no party moves to reopen, the dismissal shall be with prejudice. The Court shall retain jurisdiction over this action for any matters related to completing or enforcing settlement.

*Id.*

But Plaintiffs deny manifesting assent to the terms set forth in defense counsel's January 23, 5:37 p.m. email, and contend that the parties never in fact reached an agreement on all material terms. Accordingly, on April 15, 2024, Plaintiffs filed their motion to vacate the January 23 settlement order. ECF No. 21. Defendants have filed a brief in opposition, ECF No. 25 ("Opp."), and Plaintiffs replied. ECF No. 29.

## DISCUSSION

**A.  Did the parties reach an enforceable settlement agreement?**

Federal districts courts "have inherent authority, deriving from their equity power, to enforce settlement agreements." *Hensley*, 277 F.3d at 540. But "exercise of th[at] authority . . .

6

depends on the parties' agreement to a complete settlement." *Id.* (citing *Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir. 1983)). "[T]o exercise its inherent power to enforce a settlement agreement, a district court (1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions." *Id.* at 540-41. The two elements articulated in *Hensley* for determining whether a settlement has been reached are interrelated: if a court is unable to determine the "terms and conditions" of a settlement agreement, there is generally not a "complete agreement." *See id*. "Court-facilitated settlements are an important aspect of the judicial process and of its purpose in providing an orderly and peaceful resolution of controversies." *Id.* at 540. An order dismissing a case based on a settlement is "appropriate only when the parties have actually reached agreement. Absent agreement, a party may demand and receive full judicial process, including a trial, for the resolution of legitimate disputes." *Id*.

In determining whether a settlement agreement was reached, standard contract principles apply. After all, "[a] valid settlement agreement is a type of contract." *Calabi v. Gov't Emplyees Ins. Co.*, 353 Md. 649, 653 (1999). Settlement agreements are "subject to the same general rules of construction that apply to other contracts." *Maslow v. Vanguri*, 168 Md. App. 298, 316 (2006). "Whether oral or written, a contract is not enforceable unless it expresses with definiteness and certainty the nature and extent of the parties' obligations and the essential terms of the agreement." *Id.* at 321-22 (citing *Mogavero v. Silverstein*, 142 Md. App. 259, 272 (2002)). Such "manifestation of agreement or mutual assent" is an "essential element with respect to the formation of a contract." *Mitchell v. AARP*, 140 Md. App. 102, 117 (2001).

But manifestation of agreement or mutual assent in the abstract is not enough; a contract is only formed where the parties have "express[ed] themselves in such terms that it can be ascertained to a reasonable degree of certainty what they mean." *Maslow*, 168 Md. App. at 322

(quoting *Robinson v. Gardiner*, 196 Md. 213, 217 (1950)). Maryland courts have referred to this as "the requirement of contractual certainty." *Id.* "[A]n agreement that omits an important term, or is otherwise too vague or indefinite with respect to essential terms, is not enforceable." *Maslow*, 168 Md. App. at 322 (citing *Mogavero*, 142 Md. App. at 272). In other words, a contract is not legally enforceable unless its language is "sufficiently definite to clearly inform the parties to it of what they may be called upon by its terms to do." *Id.* (quoting *Robinson*, 196 Md. at 217). An enforceable contract "also must be sufficiently clear and definite in order that the courts, which may be required to enforce it, may be able to know the purpose and intention of the parties." *Id*.

"A settlement agreement may be enforceable notwithstanding the fact that it is not yet consummated." *Topiwala v. Wessell*, 509 F. App'x 184, 186 (4th Cir. 2013). There are circumstances under Maryland law where a more limited set of terms, short of a traditional full-blown settlement—often referred to as a term sheet or letter of intent—is itself legally binding and enforceable. Settlement conferences or mediations often conclude with written term sheets along these lines: a list of the most heavily contested terms as to which the parties have reached agreement, with the remaining terms necessary for a full-blown settlement agreement to be negotiated thereafter. For example, in *Topiwala*, although the parties had not negotiated a full-blown settlement agreement, they had "signed a written document entitled 'Settlement Terms'" that "consisted of seven paragraphs." *Id.* at 185. That written document, the terms of which were agreed to not only by counsel, but which were signed by the parties themselves, "contained all essential terms of the settlement, including specific properties and sums of money to be transferred, specific dates of transfers, a release, a warrantee, and a nondisparagement agreement." *Id*. at 186.

"[I]f an agreement for complete settlement of the underlying litigation, or part of it, has been reached and its terms and conditions can be determined, the court may enforce the agreement summarily," *i.e.* without an evidentiary hearing, "as long as the excuse for nonperformance of the agreement is 'comparatively insubstantial.'" *Hensley*, 277 F.3d at 540 (quoting *Millner v. Norfolk & W. Ry. Co.*, 643 F.2d 1005, 1009 (4th Cir. 1981)). "[H]aving second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement." *Young v. FDIC*, 103 F.3d 1180, 1195 (4th Cir. 1997). But where a "complete agreement" to settle a case has not "been reached," such that the court is unable to "determine[] the terms and conditions of that agreement," no contract has been formed, and thus the parties have no settlement agreement to "enforce." *Hensley*, 277 F.3d at 540. "If a district court concludes that no settlement agreement was reached or that agreement was not reached on all material terms, then it must deny enforcement." *Id.* at 541.

The crux of the dispute here is whether defense counsel's post-mediation email to Plaintiffs' counsel and Judge Aslan, the settlement judge who presided over the settlement conference, constituted an enforceable settlement agreement. As noted at the outset, determining whether the parties reached a complete and enforceable settlement agreement—and thus whether the Court's settlement order dismissing the case should be vacated—requires consideration of correspondence that the parties agree is protected by Federal Rule of Evidence 408. *See* ECF Nos. 22, 26, 30 (motions to seal) & ECF Nos. 33–35 (redacted filings). Accordingly, the Court's reasoning as applicable to these facts will be set forth in a separate sealed memorandum.

But what need not be sealed is the Court's conclusion, following application of the legal standards set forth above. The Court concludes that the record does not establish that defense counsel's 5:37 p.m. email constituted a "complete agreement" between the parties, *Hensley*, 277

F.3d at 540, such that it "expresse[d] with definiteness and certainty the nature and extent of the parties' obligations and the essential terms of the agreement." *Maslow*, 168 Md. App. at 321-22. There may have been an enforceable agreement if, for example, Plaintiffs' counsel had responded to that email, representing that his clients agreed to its terms. But he did not. His response within 24 hours instead makes clear that Plaintiffs did *not* consider the 5:37 email to constitute an actual term sheet, but rather Defendants' *proposal* of a term sheet. And in the correspondence that followed, Defendants' counsel acknowledged that the parties were still negotiating and had not yet reached agreement on material terms.

Defense counsel's 5:37 email comes nowhere close to the type of mutually-agreed-upon-in-writing term sheet in, for example, the *Topiwala* case, discussed above. *See* 509 F. App'x at 187. Nor is that email comparable to the written agreement, signed by both parties, in *Maslow*. *See* 168 Md. App. at 324. Instead, this is a case like *Erie Ins. Exchange v. Estate of Reeside*, where the parties' exchange of proposed written term sheets after a mediation reflected an ongoing negotiation, rather than an enforceable settlement agreement. 200 Md. App. 453, 462 (2011). The parties in that case engaged in "further discussion regarding outstanding issues . . . by way of e-mails between counsel," after meeting for mediation. In that exchange, however, the plaintiff "made clear" that it "would not agree to at least three essential terms included in the proposed written settlement agreement." *Id*. Thus, like here, "mutual assent required to make a contract was lacking." *Id*.; *see also, e.g.*, *Mogavero*, 142 Md. App. at 263 (holding that an alleged oral employment agreement was "too indefinite to be enforceable").[5]

---

[5] No hearing is necessary for the Court to reach this conclusion. In *Hensley*, the Fourth Circuit noted that a court may not *enforce* a settlement agreement amid "a factual dispute over the existence of an agreement, over the authority of attorneys to enter into the agreement, or over the agreement's terms," without conducting "'a plenary evidentiary hearing in order to resolve that dispute' . . . and make findings on the issues in dispute." 277 F.3d at 541 (citations omitted).

For these reasons, and those stated in the Sealed Memorandum, the parties did not reach a complete agreement on all material terms. In the parlance of Local Rule 111, a settlement was "not consummated." *See* Loc. R. 111 (D. Md.).

**B. The absence of a settlement agreement constitutes good cause under Local Rule 111**

There are various ways to effectuate dismissal of a case where the parties have reached a settlement in principle but have not yet negotiated and executed a full settlement agreement. One is through a motion to stay, followed later by a stipulation of dismissal (either with prejudice or without prejudice). Another is through a stipulation of dismissal without prejudice followed, upon final settlement, by a stipulation of dismissal with prejudice. There are other procedural alternatives too. In this case, like many cases that settle in this District, upon the parties' notice to the Court that the parties had (supposedly) reached a settlement, the Court entered an order pursuant to Local Rule 111, which provides a streamlined procedure for dismissal of cases where the parties have reached a settlement in principle, or agreed upon the basic terms of settlement, but have not yet executed a full settlement agreement.

Local Rule 111, which has existed in this district's Local Rules in substantially identical form since at least 2001,[6] provides as follows:

> When the Court has been notified by counsel that a case has been settled, the Court may enter an order dismissing the case and providing for the payment of costs. **Such an order of dismissal shall be without prejudice to the right of a party to move for good cause to reopen the case within a time set by the Court if the settlement is not consummated.** Alternatively, the Court, upon being notified by counsel that a case has been settled, may require counsel to submit within sixty (60) days a proposed order providing

---

Here, a hearing is not necessary because the documentary record belies the creation of an enforceable agreement.

[6] *See* D. Md. Local Rules, As Amended July 2001, https://www.mdd.uscourts.gov/sites/mdd/files/LocalRules-July2001.pdf.

11

> for settlement, in default of which the Court may enter such judgment or other order as may be deemed appropriate. An order entered pursuant to this Rule means that the entire case, including all claims, counter- claims, cross-claims, third-party claims, and claims for attorneys' fees and costs has been settled, unless otherwise stated in the order.

Loc. R. 111 (emphasis added).

As discussed above, upon defense counsel's notification that the parties had purportedly reached a settlement, Judge Russell, the presiding judge in this case, entered the Local Rule 111 settlement order that Plaintiffs now seek to vacate. That order, consistent with the rule, provided that it was being entered "without prejudice to the right of a party to move for good cause" within a specified period (there, 45 days) "to reopen this action is settlement is not consummated." ECF No. 11.

Defendants here argue that regardless of whether the parties reached an enforceable settlement agreement, Plaintiffs cannot show "good cause" for vacating the dismissal order. Opp. at 13. This argument necessarily suggests that a Rule 111 settlement order cannot be vacated on the grounds that settlement had not been consummated *alone*—and that even if a settlement has not been consummated, some additional showing is necessary to establish "good cause." This interpretation is incompatible with the plain terms of Local Rule 111. The rule provides that an order of dismissal pursuant to its terms "shall be without prejudice to the right of a party to move for good cause to reopen the case within a time set by the Court *if the settlement is not consummated*." Loc. R. 111 (emphasis added). There is no daylight between "good cause" and "the settlement is not consummated." By definition, when a settlement has not been consummated, "good cause" within the meaning of Local Rule 111 has been shown.

## CONCLUSION AND ORDER

For these reasons, and those stated in the accompanying sealed memorandum, no settlement agreement was reached in this case. Accordingly, it is hereby ORDERED that

(1) Plaintiffs have shown that "good cause" exists within the meaning of Local Rule 111 for vacating the settlement order entered on January 26 (ECF No. 11);

(2) Plaintiffs' motion to vacate the settlement order (ECF No. 21) is GRANTED;

(3) In light of the parties' filing of redacted versions of their earlier filings, *see* ECF Nos. 21, 25, 29, the parties' motions to seal (ECF Nos. 22, 26 and 30) are GRANTED, and

(4) Defendants shall file their responsive pleading within 15 days of entry of this order.

August 8, 2024

/s/
Adam B. Abelson
United States Magistrate Judge